Daniel Sadeh, Esq.
**HALPER SADEH LLP**
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com

*Counsel for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| PETER ANSAY,<br><br>    Plaintiff,<br><br>v.<br><br>W. R. GRACE & CO., ROBERT F. CUMMINGS, JR., DIANE H. GULYAS, JULIE FASONE HOLDER, HUDSON LA FORCE, HENRY R. SLACK, CHRISTOPHER J. STEFFEN, MARK TOMKINS, and SHLOMO YANAI,<br><br>    Defendants. | Case No:<br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Plaintiff Peter Ansay ("Plaintiff"), by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys.

### NATURE OF THE ACTION

1. This is an action against W. R. Grace & Co. ("Grace" or the "Company") and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a)

1

and 78t(a), and Rule 14a-9 promulgated thereunder by the SEC, 17 C.F.R. § 240.14a-9, in connection with the proposed acquisition (the "Proposed Transaction") of Grace by Gibraltar Acquisition Holdings LLC ("Parent") and Gibraltar Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Parent.[1]

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 14(a) and 20(a) of the Exchange Act (15 U.S.C. §§ 78n(a) and 78t(a)) and Rule 14a-9 promulgated thereunder by the SEC (17 C.F.R. § 240.14a-9).

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as a substantial portion of the transactions and wrongs complained of herein had an effect in this District, the alleged misstatements entered and the subsequent damages occurred in this District, Parent and Merger Sub are headquartered in New York City, and the Company's New York subsidiaries, W. R. Grace Capital Corporation and W. R. Grace Land Corporation, conduct business in this District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

---

[1] Parent and Merger Sub are affiliates of Standard Industries Holdings Inc. ("Standard"), the parent company of Standard Industries Inc.

## PARTIES

6. Plaintiff is, and has been at all relevant times hereto, an owner of Grace common stock.

7. Defendant Grace, through its subsidiaries, produces and sells specialty chemicals and materials worldwide. The Company is incorporated in Delaware. The Company's common stock trades on the New York Stock Exchange under the ticker symbol, "GRA."

8. Defendant Robert F. Cummings, Jr. ("Cummings") is a director of the Company.

9. Defendant Diane H. Gulyas ("Gulyas") is a director of the Company.

10. Defendant Julie Fasone Holder ("Holder") is a director of the Company.

11. Defendant Hudson La Force ("La Force") is President, Chief Executive Officer, and a director of the Company.

12. Defendant Henry R. Slack ("Slack") is a director of the Company.

13. Defendant Christopher J. Steffen ("Steffen") is Chairman of the Board of the Company.

14. Defendant Mark Tomkins ("Tomkins") is a director of the Company.

15. Defendant Shlomo Yanai ("Yanai") is a director of the Company.

16. Defendants Cummings, Gulyas, Holder, La Force, Slack, Steffen, Tomkins, and Yanai are collectively referred to herein as the "Individual Defendants."

17. Defendants Grace and the Individual Defendants are collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A. The Proposed Transaction

18. On April 26, 2021, Grace and Standard announced that they had entered into a

definitive agreement under which Standard would acquire Grace in an all-cash transaction. Under the terms of the agreement, Standard will acquire all of the outstanding shares of Grace common stock for $70.00 per share in cash. The press release announcing the Proposed Transaction states, in pertinent part:

### Standard Industries Holdings to Acquire Grace

April 26, 2021 08:00 ET | Source: W. R. Grace & Co.

*Grace Shareholders to Receive $70 per Share in Cash*

*Transaction Valued at Approximately $7.0 Billion*

*Delivers Significant, Immediate Cash Premium of Approximately 59% to Grace Shareholders*

COLUMBIA, Md. and NEW YORK, April 26, 2021 (GLOBE NEWSWIRE) -- W. R. Grace & Co. (NYSE: GRA), a leading global specialty chemical company and Standard Industries Holdings Inc., the parent company of Standard Industries, a privately held global industrial company, today announced that they have entered into a definitive agreement under which Standard Industries Holdings will acquire Grace in an all-cash transaction valued at approximately $7.0 billion, including Grace's pending pharma fine chemistry acquisition. Standard Industries' related investment platform 40 North Management LLC ("40 North") is a long-standing shareholder of Grace.

Under the terms of the agreement, Standard Industries Holdings will acquire all of the outstanding shares of Grace common stock for $70.00 per share in cash. The purchase price represents a premium of approximately 59% over Grace's closing stock price of $44.05 on November 6, 2020, the last trading day prior to the announcement of 40 North's initial proposal to acquire the Company on November 9, 2020. The Grace Board of Directors unanimously approved the transaction.

\*   \*   \*

The closing of the transaction is subject to customary closing conditions, including approval by Grace shareholders and the receipt of certain regulatory approvals. The transaction is not contingent upon the receipt of financing. Financing commitments have been provided by J.P. Morgan, BNP Paribas, Citi and Deutsche Bank, and investment funds affiliated with Apollo Global Management as capital partner.

40 North, a holder of 14.9% of shares of Grace common stock, has entered into a voting agreement with Grace, pursuant to which it has agreed, among other things, to vote its shares of Grace common stock in favor of the transaction.

Consistent with the terms of the merger agreement, the Company will suspend payment of a dividend going forward.

In light of this announcement, Grace will issue its first quarter 2021 earnings results on May 6, 2021, but will not be hosting an earnings conference call.

The parties expect the transaction to close in the fourth quarter of 2021. Upon completion of the transaction, Grace will become a privately held company and Grace's common stock will no longer be listed on the New York Stock Exchange. Grace will operate as a standalone company within the portfolio of Standard Industries Holdings, which includes Standard Industries' industry leading businesses GAF, BMI Group, Schiedel, Siplast, SGI and GAF Energy.

**Advisors**

Goldman Sachs & Co. LLC and Moelis & Company LLC are serving as financial advisors and Wachtell, Lipton, Rosen & Katz is serving as legal counsel to Grace. Citi and J.P. Morgan are serving as financial advisors and Sullivan & Cromwell LLP is serving as legal counsel to Standard Industries Holdings.

**About Grace**

Built on talent, technology, and trust, Grace is a leading global specialty chemical company. The company's two industry-leading business segments—Catalysts Technologies and Materials Technologies—provide innovative products, technologies, and services that enhance the products and processes of our customers around the world. With approximately 4,000 employees, Grace operates and/or sells to customers in over 60 countries. More information about Grace is available at grace.com.

**About Standard Industries Holdings**

Standard Industries Holdings is the parent company of Standard Industries, a privately-held global industrial company operating in over 80 countries with over 15,000 employees. The Standard ecosystem spans a broad array of holdings, technologies and investments—including both public and private companies from early to late-stage—as well as world-class building materials assets and next-generation solar solutions. Throughout its 140-year history, Standard has leveraged its deep industry expertise and vision to create outsize value across its businesses, which today include operating companies GAF, BMI, Siplast, GAF Energy, Schiedel and SGI, as well as related businesses 40 North, a multi-billion-dollar

5

investment platform, 40 North Ventures and Winter Properties. Learn more at www.standardindustries.com.

19. On May 24, 2021, the Company filed a Schedule 14A Preliminary Proxy Statement under Section 14(a) of the Exchange Act (the "Proxy Statement") with the SEC in connection with the Proposed Transaction.

### B. The Proxy Statement Contains Materially False and Misleading Statements and Omissions

20. The Proxy Statement, which recommends that Grace shareholders vote in favor of the Proposed Transaction, omits and/or misrepresents material information concerning: (i) Grace's financial projections; (ii) the financial analyses performed by Grace's financial advisors, Goldman Sachs & Co. LLC ("Goldman Sachs") and Moelis & Company LLC ("Moelis"), in connection with their fairness opinions; (iii) potential conflicts of interest involving Goldman Sachs and Moelis; and (iv) the sales process leading up to the Proposed Transaction.

21. The omission of the material information (referenced below) renders the following sections of the Proxy Statement false and misleading, among others: (i) Background of the Merger; (ii) Recommendation of the Board of Directors; Reasons for the Merger; (iii) Opinion of Goldman Sachs & Co. LLC; (iv) Opinion of Moelis & Company LLC; and (v) Management Projections.

22. Unless and until the material misstatements and omissions (referenced below) are remedied before the anticipated shareholder vote on the Proposed Transaction, Grace shareholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information. In the event the Proposed Transaction is consummated, Plaintiff may seek to recover damages resulting from Defendants' misconduct.

### 1. Material Omissions Concerning Grace's Financial Projections

23. The Proxy Statement omits material information concerning Grace's financial projections.

24.     With respect to the Management Projections, the Proxy Statement fails to disclose: (1) all line items underlying (i) Revenue, (ii) Gross Margin, (iii) Adjusted EBITDA, and (iv) Adjusted EBIT; (2) Grace's net income projections;[2] and (3) a reconciliation of all non-GAAP to GAAP metrics.

25.     The disclosure of this information is material because it would provide the Company's shareholders with a basis to project the future financial performance of the Company would allow shareholders to better understand the financial analyses performed by the Company's financial advisors in support of their fairness opinions. Shareholders cannot hope to replicate management's inside view of the future prospects of the Company. Without such information, which is uniquely possessed by Defendant(s) and the Company's financial advisors, the Company's shareholders are unable to determine how much weight, if any, to place on the Company's financial advisors' fairness opinions in determining whether to vote for or against the Proposed Transaction.

26.     When a company discloses non-GAAP financial metrics in a Proxy Statement that were relied upon by its board of directors in recommending that shareholders exercise their corporate suffrage rights in a particular manner, the company must also disclose, pursuant to SEC Regulation G, all projections and information necessary to make the non-GAAP metrics not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial metrics disclosed or released with the most comparable financial metrics calculated and presented in accordance with GAAP. 17 C.F.R.

---

[2] According to the Proxy Statement, Grace's "'Adjusted EBIT' is a non-GAAP financial measure which was calculated in the Management Projections **as net income** attributable to Grace Stockholders . . ." *See* Proxy Statement at 55 (emphasis added). Therefore, Grace's net income projections exist and must be disclosed.

§ 244.100.[3]

27. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**2. Material Omissions Concerning the Financial Advisors' Analyses**

28. In connection with the Proposed Transaction, the Proxy Statement omits material information concerning analyses performed by Goldman Sachs and Moelis.

29. The valuation methods, underlying assumptions, and key inputs used by Goldman Sachs and Moelis in rendering their purported fairness opinions must be fairly disclosed to Grace shareholders. The description of Goldman Sachs' and Moelis' fairness opinions and analyses, however, fail to include key inputs and assumptions underlying those analyses. Without the information described below, Grace shareholders are unable to fully understand Goldman Sachs' and Moelis' fairness opinions and analyses, and are thus unable to determine how much weight, if any, to place on them in determining whether to vote for or against the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

**A.** *Goldman Sachs' Analyses*

30. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Discounted Cash Flow Analysis*": (1) the individual inputs and assumptions

---

[3] Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (footnotes omitted) (last visited May 29, 2021) ("And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.").

underlying the (i) discount rates ranging from 8.0% to 9.0% and of 8.5%, (ii) multiples ranging from 9.5x to 11.5x, and (iii) perpetuity growth rate ranging from 2.0% to 3.9%; (2) the unlevered free cash flow for Grace for the years 2021 through 2025; (3) the range of illustrative terminal values for Grace; (4) the net debt of Grace as of December 31, 2020; (5) the effect on a pro forma basis of the pending acquisition by Grace of the FCS business announced in February 2021; (6) the net present value of tax attributes of Grace; and (7) the number of fully diluted outstanding shares of Grace.

31. The Proxy Statement fails to disclose the following concerning Goldman Sachs' "*Illustrative Present Value of Future Share Price Analysis*": (1) the individual inputs and assumptions underlying the (i) illustrative range of multiples of 9.0x to 11.0x, and (ii) discount rate of 10.13%; (2) the amount of Grace's projected net debt as of December 31 for each of the fiscal years 2021 to 2024; and (3) the aggregate dividends per share of Grace common stock estimated to be paid by Grace for each of the fiscal years 2021 to 2024.

32. With respect to Goldman Sachs' "*Selected Transactions Analysis*," the Proxy Statement fails to disclose the individual multiples and financial metrics of each transaction Goldman Sachs observed in its analyses.

33. With respect to Goldman Sachs' "*Premia Analysis*," the Proxy Statement fails to disclose each transaction and the individual premiums paid therein.

### B. *Moelis' Analyses*

34. The Proxy Statement fails to disclose the following concerning Moelis' "*Discounted Cash Flow Analysis*": (1) the future unlevered after-tax free cash flows projected to be generated by Grace; (2) Grace's estimated terminal value; (3) Grace's net operating losses and other tax credits; (4) the individual inputs and assumptions underlying the (i) range of discount

9

rates of 7.50% to 9.25%, and (ii) range of selected terminal multiples of 9.5x to 10.5x; (5) Grace's estimated after-tax unlevered free cash flows for calendar years 2021 through 2025; (6) Grace's tax attributes including tax credits and net operating losses; and (7) the corrected estimated future unlevered after-tax free cash flow for 2021.

35. With respect to Moelis' analysis of research analysts' stock price targets for Grace common stock, the Proxy Statement fails to disclose: (1) the individual price targets observed by Moelis in its analyses; and (2) the sources thereof.

### 3. Material Omissions Concerning Potential Conflicts of Interest Involving Goldman Sachs and Moelis

36. The Proxy Statement omits material information concerning potential conflicts of interest involving Goldman Sachs and Moelis.

37. The Proxy Statement fails to disclose the timing and nature of the past services Goldman Sachs and/or its affiliates provided Standard and/or its affiliates, including the amount of compensation Goldman Sachs received for providing each service within the past two years of the date of its fairness opinion.

38. The Proxy Statement provides that, "[i]n the past two years, Moelis has not provided investment banking or other services to Grace or Parent."

39. The Proxy Statement, however, fails to disclose the timing and nature of the past services Moelis and/or its affiliates provided Standard and/or its affiliates, including the amount of compensation Moelis received for providing each service within the past two years of the date of its fairness opinion.

40. Disclosure of a financial advisor's compensation and potential conflicts of interest to shareholders is required due to their central role in the evaluation, exploration, selection, and implementation of strategic alternatives and the rendering of any fairness opinions. Disclosure of

a financial advisor's potential conflicts of interest may inform shareholders on how much weight to place on that analysis.

41. The omission of the above-referenced information renders the Proxy Statement materially incomplete and misleading. This information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

### 4. Material Omissions Concerning the Sales Process Leading up to the Proposed Transaction

42. The Proxy Statement omits material information concerning the sales process leading up to the Proposed Transaction.

43. The Proxy Statement provides that, "[i]n February 2019, the Company and a potential strategic partner ("Counterparty A"), which had previously expressed an interest in exploring a potential strategic transaction with the Company, entered into a confidentiality agreement and began to engage in discussions and due diligence regarding a potential business combination transaction."

44. The Proxy Statement, however, fails to disclose the terms of the Company's confidentiality agreement with Counterparty A, including whether such agreement contained a standstill provision with a "don't ask, don't waive" (DADW) provision (including its time of enforcement) that would preclude Counterparty A from making a superior offer for the Company.

45. Without this information, Grace shareholders may have the mistaken belief that potential suitors are or were permitted to submit superior proposals for the Company, when in fact they are or were contractually prohibited from doing so. This information is material because a reasonable Grace shareholder would want to know, prior to voting for or against the Proposed Transaction, whether other potential buyers are or were foreclosed from submitting a superior proposal.

11

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's shareholders.

## COUNT I
### For Violations of Section 14(a) and Rule 14a-9 Promulgated Thereunder
### Against All Defendants

47. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48. During the relevant period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder by the SEC.

49. Each of the Individual Defendants, by virtue of his/her positions within the Company as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a) of the Exchange Act. Defendants, by use of the mails and means and instrumentalities of interstate commerce, solicited and/or permitted the use of their names to file and disseminate the Proxy Statement with respect to the Proposed Transaction. The Defendants were, at minimum, negligent in filing the materially false and misleading Proxy Statement.

50. The false and misleading statements and omissions in the Proxy Statement are material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.

51. By reason of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

52. Because of the false and misleading statements and omissions in the Proxy

Statement, Plaintiff is threatened with irreparable harm.

## COUNT II
### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

53. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

54. The Individual Defendants acted as control persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their senior positions as officers and/or directors of the Company and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading Proxy Statement.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Proxy Statement, and to correct promptly any public statements issued by the Company which were or had become materially false or misleading.

56. In particular, each of the Individual Defendants had direct and supervisory involvement in the operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Individual Defendants were provided with or had unlimited

access to copies of the Proxy Statement and had the ability to prevent the issuance of the statements or to cause the statements to be corrected. The Proxy Statement at issue contains the recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the making of the Proxy Statement.

57. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions which had input from the Individual Defendants.

58. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

59. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, the Company's shareholders will be irreparably harmed.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until Defendants disclose and disseminate the material information identified above to Company shareholders;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Declaring that Defendants violated Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Granting such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: May 29, 2021

Respectfully submitted,

**HALPER SADEH LLP**

By: /s/ Daniel Sadeh
Daniel Sadeh, Esq.
Zachary Halper, Esq. (to be admitted *pro hac vice*)
667 Madison Avenue, 5th Floor
New York, NY 10065
Telephone: (212) 763-0060
Facsimile: (646) 776-2600
Email: sadeh@halpersadeh.com
zhalper@halpersadeh.com

*Counsel for Plaintiff*